IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JULIA A. HARRIS, GRETA MOSS, LARRY PAYNE, DEBBIE CARTHAN, BERNADETTE BEEKMAN, LESLIE LEVITT-RASCHELLA, JOHN CONA, GEORGINA MEDURI, KELLY MCGURN, CASSANDRA MEDURI, AND MARK WADE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LORD & TAYLOR LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) C.A. No. 18-521 (MN) ) ) ) ) ) ) ) ) ) |

## **MEMORANDUM OPINION**

Ralph N. Sianni, ANDERSEN SLEATER SIANNI, LLC, Wilmington, DE; Janine Pollack, THE SULTZER LAW GROUP P.C., New York, NY; Daniel Tepper, WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP, New York, NY, Ben Barnow, Erich P. Schork, BARNOW AND ASSOCIATES, P.C., Chicago, IL; Howard L. Longman, Melissa R. Emert, STULL, STULL & BRODY, New York, NY; Charles E. Schaffer, LEVIN SEDRAN & BERMAN, LLP, Philadelphia, PA; Jeffrey S. Goldenberg, GOLDENBERG SCHNEIDER, LPA, Cincinnati, OH; Gary Mason, WHITFIELD BRYSON & MASON LLP, Washington, DC; Laurence D. King, David A. Straite, KAPLAN FOX & KILSHEIMER, LLP, New York, NY; John A. Yanchunis, Ryan Mcgee, MORGAN & MORGAN, Tampa, FL; Jean Sutton Martin, LAW OFFICE OF JEAN SUTTON MARTIN PLLC, Wilmington, NC; Lynda J. Grant, THE GRANT LAW FIRM, PLLC, New York, NY – attorneys for Plaintiffs and the proposed Class and Subclasses

Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Gregory T. Parks, Ezra D. Church, Kristin M. Hadgis, MORGAN, LEWIS & BOCKIUS, LLP, Philadelphia, PA – Attorneys for Defendant

April 25, 2019
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Lord & Taylor LLC's ("Defendant" or "Lord & Taylor") Motion to Transfer Venue Pursuant to Section 1404(a) to The Southern District of New York. (D.I. 18). Plaintiffs Julia A. Harris, Greta Moss, Larry Payne, Debbie Carthan, Bernadette Beekman ("Beekman"), Leslie Levitt-Raschella, John Cona, Georgina Meduri, Kelly McGurn, Cassandra Meduri, and Mark Wade (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, oppose transfer. (D.I. 23). For the reasons set forth below, Defendant's motion to transfer will be granted, and this case will be transferred to the Southern District of New York.

**I.     BACKGROUND**

On April 5, 2018, Plaintiff Beekman filed the instant class action suit against Lord & Taylor on behalf of herself and others similarly situated. (D.I. 1). In response, Defendant filed a Motion to Dismiss the Complaint on the Grounds of *Forum Non Conveniens*, or, in the Alternative, to Transfer Venue Pursuant to Section 1404(a) to the Southern District of New York. (D.I. 6). On September 14, 2018, Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") (D.I. 16), asserting the same four causes of action included in the original complaint – negligence, breach of implied contract, unjust enrichment, and negligence per se – but adding ten (10) additional named plaintiffs, a count for declaratory judgment, and nine state law claims that arise under the laws of Connecticut, Illinois, Kentucky, New Jersey, New York, Pennsylvania, and Texas. (*Id.*)

The Amended Complaint alleges that on March 28, 2018, a criminal syndicate announced the sale on the dark web of credit and debit card records. (*Id.* ¶ 2). A cybersecurity firm determined that the cards were taken in a breach involving Lord & Taylor retail stores from at least May 2017

1

through March 2018. (*Id.*). On April 1, 2018, Defendant announced that it had become aware of the security breach "involving customer payment card data." (*Id.* ¶ 3).

Lord & Taylor is a limited liability company organized under the laws of the State of Delaware. (*Id.* ¶ 26). Lord & Taylor is headquartered in New York, New York. (D.I. 19, Ex. B ¶¶ 3, 4). Lord & Taylor has no offices, employees, or stores in the state of Delaware. (*Id.* ¶¶ 5-7). According to the Declaration of Anthony Longo ("Longo"), the Chief Information Security Officer ("CISO") of Hudson's Bay Company, the parent company of Lord & Taylor, "[t]he team that learned about, analyzed, managed, and communicated about the payment card issue that is subject of Plaintiff's [sic] complaint are all based in New York." (D.I. 19, Ex. C ¶ 3).

There are 11 plaintiffs in this action, seeking to represent a nationwide class of Lord & Taylor customers, defined as "[a]ll persons residing in the United States who used their credit, debit, or prepaid debit card at a Lord & Taylor store during the period from May 1, 2017 through April 1, 2018." (D.I. 16 ¶¶ 12-22). Five (5) of the named plaintiffs are residents of New York. (*Id.* ¶¶ 16-20). The remaining six (6) named plaintiffs are from Connecticut, Illinois, Kentucky, New Jersey, Georgia, and Texas. (*Id.* ¶¶ 12-15, 21-22). At least six (6) of the named plaintiffs used credit or debit cards at Lord & Taylor stores in New York. (*Id.* ¶¶ 12, 16-20). Additionally, there are currently two cases proceeding in separate districts based upon the same breach complained of here: *Sacklow v. Saks Inc.*, No. 1:18-cv-00360 (M.D. Tenn.), *Rudolph v. Hudson's Bay Co., et al.*, No. 1:18-cv-8472 (S.D.N.Y.). (D.I. 19 at 1).

## II. **LEGAL STANDARD**

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been

2

'accorded [the] privilege of bringing an action where he chooses," *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Third Circuit has recognized that

> "[i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Id.* at 879 (citations omitted). The public interests include:

> "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* at 879-880.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case

basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*, 55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III. ANALYSIS

As an initial matter, there is no question that this case could have originally been brought in the Southern District of New York. Beekman, who brought the original complaint, is a resident of New York and used her credit card at Lord & Taylor in New York City. (D.I. 16 ¶ 16). As stated above, Defendant Lord & Taylor is headquartered in New York City. (D.I. 19, Ex. B ¶¶ 3, 4). The Amended Complaint names Lord & Taylor as the sole defendant, though it adds ten new plaintiffs, half of whom shopped at Defendant's stores in New York. When a Defendant is resident in a district and the alleged violations occurred therein, it is clear that a complaint could have originally been brought in that district. Now, the Court considers the private and public factors set forth in *Jumara* in connection with its transfer inquiry.

1. Plaintiff's forum preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Defendant argues that Plaintiffs' choice should not be afforded deference because none of the named individuals reside in Delaware and because the Plaintiffs "seek to represent a nationwide class which has no particular interest in a Delaware venue." (D.I. 19 at 17). This Court has previously noted that it is "'difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere'" and that "'[n]either *Shutte* nor *Jumara* hold or even intimate that a plaintiff's motive in selecting its forum choice is relevant for § 1404(a) purposes.'" *ANI Pharm., Inc. v. Method Pharm., LLC*, No. 17-1097 (MN), 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *VLSI Tech. LLC, v. Intel Corp.*, No. 18-966 (CFC), 2018 WL 5342650, at *2, 5-6 (D. Del. Oct. 29, 2018)). Likewise, here, where Defendant has not challenged the validity of venue or jurisdiction in Delaware, the Court is not convinced that Plaintiffs' residency and the fact that the location of the facts underlying the controversy are outside of the district dictate that Plaintiffs' choice should be provided any less deference. Similarly, the Court rejects Defendant's argument that the Plaintiff's forum preference is due less deference because this is a class action. Though some courts in this district have found that a plaintiff's choice of forum in a class action may receive less weight, the finding has been rarely applied and remains unaddressed by the Third Circuit. Thus, the Court maintains its view that neither the Plaintiffs' motives in selecting this forum nor the status of the case as a class action undermine the Plaintiffs' choice of Delaware as a forum for this case.

2. <u>Defendants' forum preference</u>

This factor favors transfer. Defendant makes clear its interest in having this case transferred to the Southern District of New York.

5

### 3. Whether the claim arose elsewhere

This factor favors transfer. Defendants argue that the "substantial part of the events underlying the cause of action arose in New York." (D.I. 19 at 13). Plaintiffs argue that the factor is neutral because their purchases were made at Lord & Taylor locations in Connecticut, New York, Illinois, Pennsylvania, and Texas, and because they seek to represent a nationwide class of purchasers, "[t]he incidents which gave rise to this case thus took place all over the United States." (D.I. 23 at 10-11). The Court disagrees. According to the Amended Complaint, the majority of named Plaintiffs made their purchases in the state of New York. (D.I. 16 ¶¶ 12-15, 21-22).

Moreover, the Amended Complaint seeks redress for Defendant's alleged "security failures" and "knowing violation of its obligations to abide by best practices and industry standards concerning the security of its payment systems." (D.I. 16 ¶¶ 6-7). There is no indication that any of the claims arose in Delaware, and Defendant's declarations submitted in support of the motion to transfer make clear that Defendant has no presence in this district. To the contrary, the declarations show that "[t]he team that learned about, analyzed, managed, and communicated about the payment card issue that is the subject of Plaintiff's [sic] complaint are all based in New York." (D.I. 19, Ex. C ¶ 3). The CISO of Defendant's parent company – whose "job responsibilities include development, implementation, and ongoing leadership of the Global Information Security Program for our [Hudson's Bay Company's] affiliates, including Lord & Taylor" – attested that all members of the information security incident response team are located in New York and "[m]ore broadly, most senior members of [the CISO's] team who direct the implementation of [the] information security policies are employed in New York or the surrounding area." (*Id.* ¶¶ 2, 4).

On the record before the Court, it appears that most, if not all, of the alleged conduct relating to security failures and knowing violations of obligations to abide by best practices and industry standards concerning the security of its payment systems concerns the actions by Defendant in and around New York. Given this, and that six of the named Plaintiffs made their purchases in New York, this factor weighs in favor of transfer to the Southern District of New York.

    4. Convenience of the parties as indicated by their relative physical and financial condition

This factor favors transfer. Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corporation*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).

Here, none of the parties are located in this district. Five of the Plaintiffs reside in New York and the remaining six live in Connecticut, Illinois, Kentucky, New Jersey, Georgia, and Texas. Defendant is headquartered and operates twelve stores in New York. Generally, this places the substantial majority of parties in and around New York. Because none of the parties are located in Delaware, all would have to travel to this district for litigation purposes. *See MEC Resources*, 269 F. Supp 3d at 226 (finding this factor weighed in favor of transfer where plaintiff's litigation costs would remain the same where plaintiff's travel to the district of litigation was required regardless of transfer). Defendant's relevant employees are located in and around New York, as are seven of the Plaintiffs. Thus, the logistical and operational costs associated with litigation for

both Plaintiffs and Defendant would likely be more complicated and expensive in Delaware than in the Southern District of New York. Taken together, this element counsels in favor of finding that this factor favors transfer.

### 5. Convenience of the witnesses

This factor is neutral. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). Moreover, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). While Defendant argues that the "Southern District of New York would be a far more convenient venue for the witnesses who already work there" (D.I. 19 at 15), it only identifies a single non-party witness who may be called for trial. This witness, Verizon, is "the Payment Card Industry ("PCI") Forensic Investigator engaged by Lord & Taylor's corporate parent to investigate the incident" and is located at 1 Verizon Way, Basking Ridge, New Jersey. (*Id.*, Ex. D ¶ 7). Defendant's opening brief does not indicate that the PCI witness could be unavailable at trial or is located outside of this Court's subpoena power, but its reply states "[t]his witness, in Basking Ridge, New Jersey, is located over 117 miles from the District of Delaware." (D.I. 24 at 4). Plaintiff argues that the PCI witness is only 85 miles from the courthouse. (D.I. 23 at 13). Neither party has supplied the Court with any support to substantiate these distances. The Court will thus take judicial notice that the geodesic distance from 844 N. King Street, Wilmington, Delaware to 1 Verizon Way, Basking

8

Ridge, New Jersey is approximately eighty-six (86) miles.[1] *See Hill v. Equitable Bank*, *Nat'l Ass'n*, 115 F.R.D. 184, 186 (D. Del. 1987) (applying the "straight line measurement method" between two points on a map).

6. Location of books and records

This factor weighs slightly in favor of transfer. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Although Defendant argues that "the corporate documents and records – the majority of evidence in this case – are located in New York" (D.I. 19 at 17), it has not identified any evidence that could not be produced in this district. Nor has Defendant offered any showing that any "documentary evidence relevant to this action is found exclusively or even primarily" in the Southern District of New York. *See VLSI*, 2018 WL 5342650, at *7. The Court notes, however, that no books or records related to the case are located here in Delaware. Because the majority of records have been identified as being available in New York, albeit not exclusively, and no records have been identified as available in this district, the Court finds this factor to weigh slightly in favor of transfer to the Southern District of New York.

7. Enforceability of the judgment

Neither Plaintiffs nor Defendant address any disparity between the enforceability of the judgment between the District of Delaware and the Southern District of New York in their papers and thus the Court finds this factor to be neutral.

---

[1] The Court used the distance measurement tool publicly available with Google Maps to measure the distance between the Courthouse and identified non-party witness.

9

## 8. Practical considerations

This factor favors transfer. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendant argues that such considerations "weigh strongly in favor of transfer where, as here, there is a related action pending in the transferee forum because issues would only need to be resolved once as opposed to wasting judicial resources in simultaneously resolving the same issues twice." (D.I. 19 at 13). The case currently before the Southern District of New York is also a class action, includes the same breach of implied contract, negligence, negligence per se, unjust enrichment, and declaratory judgment claims, has Lord & Taylor as a defendant, and stems from the same breach. *See Rudolph v. Saks and Company LLC*, No. 18-8472 (S.D.N.Y. Jun 08, 2018). (D.I. 23, Ex. A). A court in this district has previously noted that "suits involving the same legal and factual issues should be decided by one court and not permitted to proceed in two different courts simultaneously." *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del. 1987) (citation omitted). The denial of Defendant's motion to transfer would result in at least two suits, involving the same legal and factual issues, to continue simultaneously in different courts. Transfer, on the other hand, provides an opportunity for the Southern District of New York to consolidate these cases and decide the issues in a more expeditious and inexpensive manner. Additionally, as discussed above, the Defendant and a number of the named Plaintiffs here – as well as relevant witnesses and documentary evidence – are located in, or within close proximity to, New York, while no parties, witnesses, or evidence exist in this district. Without transfer, these considerations would greatly increase the cost of litigating this case and create inconveniences for many, if not all, of the parties. Thus, the Court finds that this factor strongly weighs in favor of transfer.

9. <u>Relative administrative difficulty due to court congestion</u>

Neither Plaintiffs nor Defendant argue that any disparity exists for the administrative difficulty due to court congestion between the District of Delaware and the Southern District of New York in their papers and thus the Court finds this factor to be neutral.

10. <u>Local interest in deciding local controversies at home</u>

This factor is neutral. Plaintiffs argue that the local interest weighs against transfer because Defendant is a Delaware limited liability company and "[a]s the state of incorporation for the defendant entity, Delaware has a local interest in adjudicating this matter." (D.I. 23 at 18 (citing *Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002))). Though Defendant, as a limited liability company, is organized under the laws of, as opposed to incorporated in, Delaware, it has been found in this district that a company's "status as a Delaware LLC could be said to foster an articulable local interest in Delaware as to the outcome of [a] dispute." *TSMC Tech., Inc. v. Zond, LLC*, No. 14-721 (LPS)(CJB), 2014 WL 7251188, at *21 (D. Del. Dec. 19, 2014) (citing *Autodesk Canada Co. v. Assimilate, Inc.*, No. 08-587 (SLR) (LPS), 2009 WL 3151026, at *9 (D. Del. Sept. 29, 2009)), *report and recommendation adopted*, No. 14-721 (SLR) (LPS), 2015 WL 328334 (D. Del. Jan. 26, 2015). This interest, however, may be lower than that involving litigation "solely among Delaware corporations." *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012). On the other hand, the *Intellectual Ventures* court noted that a transferee district also had an interest when parties have a presence therein. *Id.* The Third Circuit, moreover, has found that a district in which a defendant is headquartered maintains an interest in the litigation. *In re Amendt*, 169 F. App'x 93, 97 (3d Cir. 2006). Here, the litigation includes eleven individual Plaintiffs from six states, including New York, and a Defendant organized under the laws of Delaware, but headquartered in New

11

York. Given the competing interests of this district and the Southern District of New York, the Court finds this factor to be neutral.

### 11. Public policies of the fora

Neither Plaintiff nor Defendants address the relative public policies of hearing the case in the District of Delaware and the Southern District of New York in their papers and thus the Court finds this factor to be neutral

### 12. Familiarity of the trial judge with the applicable state law in diversity cases

The parties agree that both courts can properly apply the appropriate law to the case. (D.I. 19 at 18; 23 at 19). The Court finds this factor to be neutral.

### 13. Balancing the private and public factors

The twelve *Jumara* factors counsel the Court to transfer this case to the Southern District of New York. Five factors weigh in favor in transferring the case, while one weighs against transfer and the remaining six are neutral. Though a plaintiff's choice of venue is generally provided paramount consideration under *Jumara*, the five factors that weigh in favor of transfer create a strong showing that this case is more appropriately resolved in New York. Specifically, where the convenience of the parties favors New York, the claims arose in New York, the relevant evidence is in and around New York, and transfer would make the trial more expeditious or inexpensive, the Court finds the balance of convenience to be sufficiently strong to overcome the Plaintiffs' choice of forum. For these reasons, Defendant's motion is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to transfer the case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.